I'm Bob Kelleher Jr. and I represented Mr. Two Moons also at the trial court level. And I guess the main issue I want to focus on is this two-level enhancement for a pattern of activity involving the same victim. And I want to start by saying that this guideline 2A6.2 was kind of added later as applying to this particular offense. The section 117 was enacted in 2006. The guideline was only applied in 2009. And so I think the court needs to be cautious about applying the guideline to this type of offense. Specifically, the guideline originally applied to interstate domestic violence, which does not have as a requirement a predicate offense. The case at bar is a case where there has to be at least two prior offenses against somebody, not necessarily the same victim. And in the indictment, the government chose to allege as predicate offenses two prior offenses against this very same victim. And therefore, I would argue, I think it's pretty clear that any offenses against, say, the ex-wife cannot be taken into account. In fact, they don't even come in under relevant conduct because he had already been sentenced for those two prior offenses. And so they're not relevant conduct. That's Application Note 8, 1B1.3, I think, is relevant conduct. So that leaves a factual matter of how many prior offenses do we have. And it's true that this couple had a very dysfunctional relationship with a lot of fighting and a lot of drinking. The pre-sentence report, according to the government, I think they had, like, six fights altogether. I believe there were only five. Two of them are the instant offense. That's Paragraphs 99 and 100 of the pre-sentence report. Two of those were used as predicate offenses. It doesn't say which two. But that only leaves Paragraph 88. And I would point out that the offense in 86 and the offense in 89 are the same offense. I did not enter the, and neither did the government, enter the actual court to tell. And I'm telling the court that, in fact, they are the same. Because if one looks at the date on 86, it shows it was dismissed on 6-1504. And Paragraph 88, or I'm sorry, 89 shows an offense of 6-1504. That's just a go back to the sentencing judge and introduce that tribal record if we really wanted to put a fine point on it. But that leaves one last offense or assault. The government is also arguing that an incident which is subject in Paragraph 92 counts as toward a pattern of assault or harassment. But that particular charge, according to the pre-sentence report, did not involve a charge of assault. It was child endangerment and disorderly conduct. It does say that the two spouses were fighting. It sounds like just their mutual yelling at each other sort of thing. And I would argue that does not count as harassment, threats, or assault for purposes of a pattern of activity. I guess this is all kind of complicated factually, but bottom line is there are five incidents involving Mr. Two Moons and the victim. Two are the instant offenses, counts one and two. Two have been used by the government as predicate offenses. And it would be impermissible double counting to use those to enhance this sentence. That leads to one incident where there was an assault. And I can't remember if it was enough to constitute a pattern. The pattern has to be one incident of this plus one incident of that. And there's only one incident of anything that counts, if that's clear. I'm kind of confused myself now. But that's, I mean, I think it's a mathematical computation, judges, your honors. And it is impermissible double counting to use that. Well, just simply because they were referenced in the indictment? Or I'm trying to understand why you, what's your specific basis as to why it's double counting? Well, the government chose, the government could have chosen, I suppose, incidents involving wife number one, the ex-wife, as predicate offenses. But the government chose to indict using those specific two. And is there authority that says then they're now precluded? You don't have anything specific. It's just the argument. You know, I can't find specific authority, except, of course, you know, the Constitution being unnoticed about what one is indicted for. I found an analogous situation, which is 8 U.S. Code 1326, reentry after deportation. There's case law that if, that's a two year mandatory, two year maximum. Whereas if a person is charged with reentry after having been convicted of a felony, it's a 20 year maximum. And there's case law where the prosecutor fails the charge in the indictment, the reentry after a prior felony, and therefore it was limited to the two years. I think that same argument applies here. The government chose which cases to bring in to the indictment. But is this enhancement to reflect a, you know, a pattern of, of abuse or, you know, a pattern of this type of conduct? Well, it is. Clearly it is. And, and I guess I'm just looking at his record. He was arrested for 2003, while the, I guess the incident offenses occurred in 2008 and 2010. So, I mean, I don't think that the base range for a crime involving two assaults, I mean, I think this whole enhancement was meant to capture whether or not, or reflect that it captures all the wrongfulness of the defendant's behavior. And well, that's true. But again, I think this guideline needs to be looked at cautiously because it was originally intended for an offense that did not have two predicate offenses, whereas this one does. So I think, I think the court needs to be pretty mathematical about the analysis here as to which ones are predicate, which ones are instant, and which ones can be used as a pattern. And I think there's only one that can be used as a pattern, Your Honor. Could I reserve the rest of my time for rebuttal? Certainly, yes. Thank you. Good morning, Your Honors. May it please the court. My name is Michael Shin for the United States. Your Honors, as an initial point, I guess I would just like to respond to Mr. Kelleher's suggestion that the court apply these guidelines cautiously to this offense, at least in the 2010 Guidelines Manual. If you look at appendix A, the offense at issue here, 18 U.S.C. 117, specifically as having the offense-based guideline of 2A.6.2. So that suggests that the commission has determined that this is the appropriate guideline to use in this type of offense. Does it matter that it wasn't intended for, I think your opponent here, or your colleague, Mr. Kelleher, was saying, because it wasn't originally intended to be used in this manner, we should not be using it? I guess I would just suggest to the court that this is not a rare occurrence in the guidelines, that the guidelines generally, for a number of different base level offenses, apply to a wide variety of types of offenses and don't necessarily, you know, there's an instruction where there is not an explicit guideline to the one that most closely resembles it. So I think the commission understood and the guidelines are created in such a way to capture broad ranges of conduct and offenses. So I don't think that's rare in this case. I'd like to, Your Honors, I'd like to separate a question that seems to be confused here in the argument and in the briefing. I think the first question is, was there double counting? And that's what Mr. Kelleher has been addressing with regard to counting the various instances of domestic abuse, that issue here. There's a separate and later question, which I don't think has been addressed properly, which is, is that double counting impermissible or improper? This court has said on numerous occasions that even if there is double counting, that the guidelines contemplate it and expressly endorse it in most instances. So I think that's the second question. So I'd like to just kind of set the stage for how I'd like to address this issue. Getting to the factual issue of how many actual instances there are, I don't think there's any dispute that there are five separate instances here. And so if you look at, you know, as Mr. Kelleher said, those five instances, four convictions and one dismissal, those were considered by the court. You have two other additional instances which are in dispute. I guess I would suggest with regard to the June 15th, 2004 incident, which Mr. Kelleher has suggested is the same as the June 4th, 2004, to the extent the court considered the June 15th, 2004 dismissal, it's not clear on the record, but to the extent the court did consider it, the argument that it's the same as the June 4th would be waived. It was not raised below. The court did not have the any record on that issue. But even setting that aside and taking the five instances that are not in dispute, I think that's plenty to suggest that there was no double counting, let alone impermissible double counting in this case. In considering whether there's a pattern for purposes of the enhancement, the specific offense characteristic enhancement, you look to whether there were at least two separate instances. And based on the guidelines themselves, it's clear that you can include the instant offenses and in fact must include the instant offense when considering whether there's a pattern. So if in considering whether there's a pattern, you have to consider the two instant offenses, that alone is sufficient to create a pattern. Counts one and two in the indictment, both were domestic violence offenses. They clearly constitute a pattern which the court made as a finding of fact in law. And those two alone were enough to apply the enhancement or the adjustment in this case. Then that leaves you with the three prior instances, the June 26, 2002 conviction, the November 5, 2003 dismissal, and then the June 4, 2004 conviction, all to be the predicate prior offenses for to establish jurisdiction or the elements of the base offense in both of those counts. I don't think there's any basis to say that those three convictions or two of those three convictions couldn't be used as predicate for both counts one and two. They don't have to be separated out as perhaps suggested by Mr. Two Moons. So the government's position with regard to whether there was double counting in the first instance is that there were among these five convictions sufficient number to both allow the judge to find a pattern of abuse for the enhancement and not count or not double count the prior convictions used to establish jurisdiction in the first place. Moving along to the second question, even if this court were to find that the court doubly counted certain of those offenses, I would suggest that that is not impermissible. If you look to the case law of this court, it has repeatedly said that double counting is not impermissible. In fact, I would suggest that the default rule is that double counting is not permissible unless it is expressly prohibited. Section 1B1.1 of note 4B of the commentary that states that absent an instruction to the contrary, enhancements, adjustments and determinations under chapters two, three and four are to be applied cumulatively. And it also notes that these determinations may be right there in the guidelines. The commission is telling us that double counting is permissible unless it is, there's an absent, excuse me, unless there is an express instruction to the contrary. This court's decisions in Reese and Staudterow support that general notion. In Reese, this court said, this is at 2 that the sentencing commission plainly understands the concept of double counting and expressly forbids it where it is not intended. So again, you have the default rule that double counting is permitted unless it is expressly ruled out. And in Reese and Staudterow, this court has set out certain tests to figure out whether there's impermissible counting. In Reese, the test seems to be that there's impermissible double counting where the same harm is accounted for in different applications of the guideline. In Staudterow, the court says that double counting is okay so long as every application of the guideline, even involving the same conduct, serves a unique purpose. So I think in either of those tests here, the double counting, if there was double counting, was some harm, the Reese court clarified that it's impermissible only where absent the doubly counted conduct, it's impossible to come within this guideline. In other words, when you're determining which guideline, base level offense guideline to use, that the conduct that's at issue is going to be in every single one. And here you don't have that. So the fact that there were two prior instances of domestic violence, that as we've discussed and as I think counsel would admit, is not going to appear in every application of 2A.6.2. The other wording that the Reese court used was it's impermissible if one application is lesser included of the other. And clearly you don't have that here. You can have, in fact, 2A.6.2 is directed towards interstate domestic violence and violations of orders of protection. So those on their face would not involve the same conduct that's at issue here. Can I ask you a question about the obstruction charge? It appears in the letters Mr. Toomans expressed his disappointment with his wife's decision to cooperate. How do you distinguish that from a threat which seems to be required for obstruction of justice? A threat, is that what you said? A threat, was it? Well, I guess I would argue, Your Honor, that under the guideline an explicit threat is not required. Under 3C.1.1, a simple attempt to obstruct or impede the example set forth in the commentary make clear that that's a pretty broad range of conduct that's captured there. Attempting to influence, I'm sorry, threatening, intimidating or otherwise unlawfully influencing or attempting to do so. So that a threat is part of that but not the only type of conduct there. So intimidation clearly, I think the letters set forth a clear pattern of subsection F. The fact of sending the letters or what's in the letters, because mostly what's in the letters is insults and expressions of disappointment. Well, I guess first off I would note that the court should view these letters and the content in them within the context of what's going on here. Both these offenses as well as the history between these two individuals. So you have two individuals, a chronic serial abuser who has violent tendencies. I would suggest given that as the historical context, it doesn't take much as far as to create a threat. But beyond that, I think not just the fact of sending the letters, Your Honor, but the content in them clearly was meant to influence her at a minimum and to intimidate her. And I could go through some of the examples. Thank you very much. Thank you, Your Honor. If I may, Your Honor, briefly, I think counsel's wrong about the thought about double-counting being condoned in the guidelines. I think it's just the which I've done a lot of. That's 2D1.1. Somewhere in there is a two-level enhancement for possession of a firearm. And there's a specific note that says that shall not be applied in the case where the guy has a 924C conviction also. So in other words, the 924C is the firearm with the drugs. And if he has five years on the 924C firearm count, he's not going to get the extra two levels for using a gun in connection with the drugs, because that would be impermissible double-counting. I think that's a classic example. Also, as far as the guideline applicability, we agree that 2A, whatever the number is, I'm blanking on it right now, applies to this case. But the statute, section 117, has an effective date of 2006, and the guideline was not actually connected to it in the appendix until 2009. And the guideline was originally set up for that interstate domestic assault, which does not have a predicate offense. I'm not saying don't apply the guideline. I'm saying apply the guideline very cautiously and very precisely, which is where I'm talking about parsing these specific incidents. And I think I did raise below the June 15, 2004 in my sentencing memorandum, but I don't have that with me. As far as the letters, judges, again, I represented Mr. Tumlin's below. And this is a classic case of a man being locked up, and his wife is on the outside, and she's messing around on him, and he's really upset about it. And that's pretty much what that boiled down to. He was jealous. He was angry. He was upset. And that's reflected in the content of the letters with the name-calling and so on. And it just doesn't rise to the level of obstructing justice. He's saying, put in a good word for me. Tell the judge we're going to get together when I get out again. This is all going to be okay. It doesn't rise to the level of a threat, certainly. And especially if you read it together with his letter of acceptance of responsibility, where he's really sorry for what he did. And he's just not telling his wife to falsify anything, to lie. He's just saying, put in a good word for me. We're going to work this out when this is all over. It's just not obstruction. And those are the counterpoints I have to counsel's argument. Thank you very much. Thank you. Thank you. Thank you both for your argument. The case is submitted.
judges: Kobayashi, Silverman, Murguia